Mr. Vetter, if you are ready. Thank you, Your Honor. Good morning. This appeal concerns the proper test for establishing conception of a DNA molecule defined solely by its complete sequence ID. Not reduction to practice? Didn't they reduce to practice? No, they did not, Your Honor. Let me address that. This court in Amgen stated that in some instances an inventor is unable to establish a conception until he has reduced the invention to practice through a successful experiment. This situation results in a simultaneous conception and reduction to practice. Well, first of all, didn't that occur when they got the sequence which was more than 99% accurate? And secondly, hasn't the art progressed so that they know more than they used to know in terms of what they had? They knew more than what they used to know, and there's an old adage that says tough cases make bad law, and here they were close, but they didn't cross the finish line. The test is whether or not they had a complete idea or an idea of the complete invention. Here, that complete invention is defined by the complete sequence ID. It's a unique DNA molecule. It's specific, and that's it. If you had one nucleotide difference, that's a different molecule. And Pfizer got close, but it didn't reach the finish line. Did they not get it in November of 1995, or did they get it but misnamed less than 1% of the nucleotides? What they were attempting to do was to identify what they had. They had isolated a clone, and they were sequencing it in an attempt, again, to identify what they had. And in the sequencing work, they were unable to determine the exact sequence. For example, they had two clones, clones 11 and 14. Each was long enough to contain the complete coding sequence for the particular gene that they were focused on. However, in their sequencing work, there were two differences in the results they got. And neither one of the results was the sequence ID number 3 that identifies the count at issue here. So they didn't have the sequence ID number 3 of the count. Counselor, are you asking this court to adopt a per se rule that you have to have the sequence in order to conceptualize the DNA? Yes, in this sense, Your Honor. If we have a situation where the count is defined as a specific sequence ID, then yes, in order for someone to conceive of that particular sequence, they need to have the complete sequence. They need to know the structure of that DNA. DNA molecules are special. They're not like typical chemical compounds where you can distinguish them based on chemical and physical properties. For example, you can have density, molecular weight, reactivity, a number of different properties of a chemical compound, and you can use those to distinguish it from other compounds. But a DNA is a code. It's like a computer code, and it uniquely defines a particular protein. Are you saying there's no other way to define the invention other than a sequence? There's no other way to distinguish it from things that are not the invention. For DNA, you can't look at the chemical and physical properties because DNA consists of four nucleotides in different orders in a long chain. So every DNA of, let's say, approximately the same length is going to have the same chemical and physical properties. But didn't they know that they had the IL-13 nucleotide? They believed that they had it. They had a belief. They had a belief? Yes. Isn't belief pretty close to conceptualization? It may be close, but it's not conception. What they did was they believed they had it. They never tested it to see if they had it in fact. Isn't that more reduction to practice? Yes, Your Honor, but this is a case where generally conception and reduction to practice happen at the same time. It's because of the DNA that you cannot predict what it is. Well, it generally happens at the same time, but does it have to happen at the same time?  Why? Because the only way for them to know that they had it would be to sequence it, isolate it, sequence it, express it, and test it. Until they showed that it would express the protein of interest, they don't know if they had it. It was an unknown. They thought they had it, but they didn't know. But I think it's also key that in Amgen the court said that they agreed with the district court that in that case there was a simultaneous conception and reduction to practice. And that's because the inventor Lynn, who was a water priority, had not only isolated the genes, but he had expressed it and he had tested it. He tested the protein, expressed protein for its functionality and showed that it worked. That was a reduction to practice. And so the court in Amgen recognized that Lynn had had a simultaneous conception and reduction to practice by not only sequencing the gene, but expressing it and testing it. Counsel, what is your theory as to how the advances of science between Amgen and now might affect whether in fact you have to have reduction to practice in order to have conception and whether they go together and are necessarily in this field of science concurrent? I believe that in the context of isolated DNA, in particular if you define the DNA as a complete sequence ID, unique, not 90% of it, not 95% of it, but 100%, then you're not going to get a conception until you've reduced it to practice. That means you've at least isolated it and sequenced it completely. Until that point you don't have a conception. Well, it's true. If you have no idea what its nature is when you're looking for it, and you don't know it until you get it and sequence it, but here you're 99.6% and there's lots of evidence that it's what they were looking for. Your Honor, there was some evidence. They had the same ends or they had homologies. Homology with a mouse? With a mouse, but they had two different clones that were giving them different results. So at that point they could not distinguish clone 11 or the coding sequence of clone 11 from the coding sequence of clone 14. They couldn't do it and that's because they didn't know what they had yet. And it wasn't until after Sanofi's benefit date that they didn't know what they had. And ultimately that was in February of 1996 when they had completely done all the sequencing work and they could precisely identify the sequence that they had. Now, some may wonder, does this make a difference now, especially with the American Invents Act? But the fact is, is that the first to file provision does not take effect until March 13th or 16th of this year. Every application of patents that has an effective filing date before March 16th of this year is going to be under the old system, which means we're going to have interferences for a dozen more years at least. So to prevail, you'd have to establish or we would have to conclude that there cannot be conception, because it's certainly clear that there was diligence to reduction of practice. At whatever stage, whether it's when they still had a few nucleotides that were in error, that they straightened out or not. That's correct, Your Honor. They cannot rely on diligence because they never established a conception from which to measure the diligence. Their conceptions didn't occur until after Sanofi's benefit date. Their conception at the earliest, we contend, is in February of 1996, which is when the board found that they first knew what the sequence was. But here they had already isolated the stretch of DNA. If the function was known, this was not a matter of uncertainty. They knew exactly what it was they needed, and they set about identifying the nucleotides, reproducing for further study and presumably for commercial purposes. Well, no, Your Honor. Pfizer did not know what they had. They didn't know if it would work. Their expert, Dr. Lavallee, testified that if you have a single error in a coding sequence, it could cause the sequence to not express a protein, or if it expresses a protein, it will express one that doesn't function. That was an error in reduction of practice, which they remedied. No, that would be an error in the sequence of the clone that they isolated. It depends on whether you call that conception a reduction of practice, does it not? No, Your Honor. It depends on whether they have identified the specific sequence of the invention of the count. And in their work, in this kind of work, errors occur in the coding sequences. When you do a reverse transcriptase to get your cDNA, that you have your clone pool, they had 400,000 clones, errors come in. And if these clones... It doesn't matter what the error is. It may be an error in a non-coding sequence. That's correct, that could happen. It could be in the coding sequence or not in the coding sequence. If it's in the coding sequence, then it matters, according to their expert, Dr. Lavallee. So until they had the complete sequence and they tested it and established that it would express a protein and the protein would work, and it was what they were looking for, they hadn't had a reduction of practice. Mere isolation is not a reduction of practice in the context of the DNA. Counselor, if I'm really understanding you correctly, you're really saying this court should adopt a rule that with regard to DNA, that reduction of practice and conception have to be at the same time. Is that correct? Well, I think this court already has a rule in that sense. In particular cases, but not in all cases. It seems to me the question is where does this fit? Okay, I think this case fits squarely within the law as set forth in Amgen and Fierce. And that said, in both of those cases, they did not have a conception until they had a reduction of practice. And the reduction of practice was not mere isolation of the gene. It was expressing it and testing it. As Judge Newman points out, that was a particular case. Yes, Your Honor. And what we wrote in Amgen was that you need a picture of its structure or properties or other characteristics sufficiently to distinguish it. So we left an opening for future development of the science. Yes, Your Honor. And in this case, we don't have facts that the science has advanced to a point where you can distinguish two DNAs that are similar without having to sequence. Here we have a situation where the only way for them to distinguish similar sequences, for example, the sequences of clones 11 and 14, was to know the sequence. And they didn't know the sequence before Sanovi's benefit date. So let's hear from the other side and we'll take a rebuttal time. Ms. Lee. Thank you, Your Honor. Good morning. May it please the Court. Your Honor, the priority context in this interference is about substance, not form. Both common sense and black letter logic pay that. If substance, not form, that matters. The count in this interference is directed to an isolated DNA molecule, which is a physical substance. The letter sequence in the count is merely a representation of the substance. And Pfizer had the substance and recognized the substance weeks before Sanovi's priority date. You're saying Pfizer reduced it to practice first? Correct. Did they have something that had errors, such that they did not get the claimed substance? Or did they get it, but perhaps misnamed less than 1% of the nucleotides? It's the letter, Your Honor. When a clone is in hand, that clone is permanent, it's fixed. The error, the 0.7% error in the sequence letter, it's just like misspelling in the word. Sanovi's fixation on sequence perfection is not reasonable. It's akin to saying a copy editor of William Shakespeare's Romeo and Juliet was the true author of the play, when all he did was to take a draft of the play, correct the misspelling. And that can't be right, because that work was not creative. The creation was already done by William Shakespeare. The same was true here. When Sanovi corrected those eight errors, what he did, what they did was not inventive, because as Pfizer's evidence has shown, in 1995, sequencing was routine. It can be done by technicians without any inventive skill. So here, the correction of the eight errors out of 1,200 nucleotides was not inventive. But what did they conceive then? They weren't the mouse, the murine, DNA, the fact that there were things to be done here. Is that where the conception is? Yes, Your Honor. When, on October 16, 1995, Pfizer obtained clone 11, separated it from all other DNA molecules, but we did not stop there. We went on to characterize this clone 11 to learn more about it. We compared clone 11 to a mouse gene that Pfizer had shown to bind mouse IL-13 protein, and we found a high degree of homology. We also determined the front, back, and side of clone 11. That gave us the confidence that the clone 11 insert contained a full-length human IL-13 binding gene. But meanwhile, Sanovi filed their patent application. So unless this is a sufficiently complete conception, what happened after their filing date doesn't really help, does it? Yes, Your Honor. You can say it's diligence to reduction of practice, provided there was a prior conception. Correct. On October 23, when Pfizer concluded, based on its experimental data, that clone 11 contained a full-length new gene encoding human IL-13 binding protein, that's when Pfizer had conceived and actually refused to practice clone 11. In other words, conception and reduction of practice occurred at the same time. Correct, Your Honor. Because you didn't know what you had to define it until you got it. Correct, Your Honor. And you substantially got it. Yes, exactly. But in that case, you don't have priority on that theory. We had a priority. The actual reduction of practice was after their filing date. No. October 23, that's when we actually reduced the clone to practice. That was before the December 6th priority date. At that date, did you actually have the DNA sequence actually coded? We did. Clone 11 had a complete sequence that is therefore within the county. I thought you didn't code it until February. That's the latter sequence. As I mentioned earlier— But it's the latter sequence that is the final reduction to practice, isn't it? It's not the earlier sequence. That's incorrect, Your Honor. The latter sequence is just a mean. It's a chemical formula. It's a mean to describe the substance being claimed by the DNA count. So I wanted to first start, as I said, clone 11 falls squarely within the count. That is not a fact that has been disputed. So are you saying then if this court believes that the reduction to practice did not occur until February, then you lose? That's correct, but that would not be a correct holding because when the count is directed to a physical substance, you have actual reduction of that substance when you obtain that clone. We did not just obtain a clone. We recognized what that clone was. It's not a case where we obtain a clone among 100 other clones, put it in a freezer, and did not recognize that it was an invention, what it was, until Sanofi's priority date. We understood what that clone was well before Sanofi's priority date. In other words, you made it before Sanofi's filing date. Correct. But you didn't totally characterize it. Well, more than 90 percent, but not totally. You made a couple of mistakes in determining the sequence. Let's not forget that DNA molecule, as the engine calls it, is a chemical compound. The nucleotide sequence is a structural formula of the DNA. And let's not forget that the formula is just a means, not the only means, to define a compound. But it was incorrect? We have an error, but the error is like proofreading. The sequencing technology was so advanced in 1995 that any skilled person in the art can take our physical clone and correct those few errors. And what's more, it's not required for us to even have that 99.3 percent as the sequence. If you filed a patent application naming the 99-point-whatever-percent nucleotides, could you have filed a certificate of correction or reissue when you found what the remaining 0.5 percent were? Yes, Your Honor. When you disclose a clone in enough terms to distinguish it from other clones, you can go back to correct an error in the structure. A long line of cases. It would not be new matter? That's correct. Is it the same material? It's the same material because the sequence is fixed. Just like in a number of cases from CCPA, Emeagwali, Nathan, and more recently from Discord, the University of New Mexico case, inventors were able to go back to correct structural errors in a disclosed chemical compound without losing priority. I don't want to interrupt you, but this is troubling. Even by the time you had the incorrect formula, they had already filed? We have the incorrect formula with the 99.3 percent in November. That was before their filing date. That was before? Yes, correct. Okay. So I also want to point out that the formula is not the substance being claimed here. The formula is an abstract idea. The claim is directed to a physical substance. And as Judge Rich said in Ray Popesh, a formula is not a compound. While you may search in a claim to identify what's being patented, the thing that is patented is not the formula, but the compound identified by it. And he wrote the same thing in Petitsi v. Reinhart. The product, not the formula or name, is the invention. It's up to this that priority has to be shown. Now, De Novi has said there's a per se rule. DNA is different. For DNA conception, you have to have a complete nucleotide sequence. That is incorrect. That misses the point of conception. But this isn't a product that was synthesized. This is a product that existed and was isolated. Correct. And its existence was known before? How do you know that these parties got into it? It was not known that there was this human IL-13 binding protein before. It was a new discovery, Your Honor. So to continue on the per se rule, CCPA held in Coleman v. Dines that conception turns on the question of whether an inventor could express, quote, a complete thought expressed in such clear terms as to enable those skilled in the art to make the invention, unquote. So on October 23rd, when Pfizer had the actual clone IL-11 and knew what it was, Pfizer inventors could have given this clone to a skilled person in the art. That skilled person in the art could make more of that clone and can use that clone, all without knowing the complete nucleotide sequence from Pfizer. And did Amgen and Fierce have a per se rule for DNA conception that you need to conceive the complete nucleotide sequence? No, you did not. The Amgen and Fierce had very different facts. There, the alleged prior inventors, all they had was just a research plan to isolate a DNA that's being contested.  and hoping that the fishing base can fish out the DNA they wanted. Those inventors had not actually isolated any DNA. Here, we have isolated the DNA. We have reduced it to practice. Then, going back to Judge Lori's question about are there other ways besides structure to distinguish or to define a nucleotide sequence? Yes, there are. It is, as the Amgen court held, DNA can be defined by its structure, but it can also be defined by, quote, its method of preparation, its physical or chemical properties, or whatever characteristics sufficiently distinguish it. It's defined by name, excuse me. It's just defined by name here, right? When you say IL-13 binding protein gene or you have the clone, you can link the name to the actual clone. That's one way to define and distinguish it. When you come to me with an interferon gene, I know that gene is different from my gene. When you come to me with a gene that's known to bind IL-2, we know that's different because I have IL-13 binding gene. And what's more, when you have a physical clone in your hand, you can distinguish it whatever way you want. All right, but then are you saying that if you take the cDNA that actually has the nucleotide sequence that it was thought to have before their filing date, the erroneous nucleotide sequence, slightly erroneous, and express that, you'd have gotten the IL-13? The errors in this letter sequence were leading errors. They were not errors inherent in clone 11. Clone 11 has the correct sequence. So the answer is yes? Yes, you can get IL-13 because clone 11 is the correct... But that wasn't done, was it? Excuse me? That wasn't done, it wasn't tested, was it? You're saying that we assume that that would have happened? Based on the way the cDNA clone was prepared, our inventor had the reasonable belief that this would be a faithful replica of a naturally occurring gene. Well, he didn't know that the machine had made a mistake, which it was remedied, that's clear. But how did they know that it was incorrect? How did they know? It was correct because when you have the DNA, you reduce the DNA to practice. Whether it can be encoding IL-13, one, our inventor believed that it did based on all the work we had done. Because we don't know, right? If the count is directed to a method of expressing IL-13 protein using clone 11, then maybe you do have to actually express it to actually reduce that method claim or method count to practice. But the count here is to a substance. Here, when you get a substance, you have reduced the substance to practice. And our expert testimony has shown that our belief, Pfizer inventors believed that this would encode a full-length human IL-13 binding protein was a reasonable belief to a skilled person in the art. And what's more... So you're really telling us that the invention was made when they carved out of the genome this piece of DNA, or at least from the cDNA. And recognized it. And recognized that it produced the IL-13 even though they didn't know... It binds to IL-13 binding protein. Correct. For a count directed to the DNA substance, that's when our conception and actual reduction to practice have occurred. And that engine held the same... I don't understand why you said earlier that if the reduction to practice did not occur until February, why wouldn't diligence between conception and reduction to practice not get you over that hurdle? That would be our second line of argument. We did have evidence showing diligence... So you are arguing that then? Yes, but we didn't need to go there because on October 23rd... I understood that, but earlier you said you would lose if the court went there. If we did not have diligence. But here in this case we do have diligence. Every day counting from right before their filing date up to our day of filing a constructive reduction to practice. The board didn't decide on diligence, so did they? Because it was not necessary. You didn't need to go there. The board felt it was not necessary. Because we have a simultaneous conception and reduction to practice before the priority date. But I thought your answer to Judge Davis' initial question was that if you didn't have conception until the reduction to practice measured by the correct identification of the cDNA, you would lose. Yes, if you didn't have conception before their filing date, we would lose. However, when you have a clone and the count is directed to a physical substance, when you have the physical substance and you understood what the physical substance is, you have conception. Not only conception, but also actual reduction to practice. I understand that's your first argument, but my question to you is if this court were to find that you only had conception in the November date, but you did not reduce it to practice until the February date, and that you had diligence, would that be a basis for affirming you or not? Yes, that would be, because we do have diligence showing starting from right before the filing date up until our actual reduction to practice date. Okay, so did you just misspeak earlier when I asked you that question? Yes, I did. That was assuming, but that's not the case here. And just one last point I want to wrap up, which is while the material limitation cannot be ignored in a count, but a conception can be had in terms that are different than the terms that are used in a claim or interference count. So it's the case here. We understood the invention in a different term than SIG-ID number 3. We understand the invention as clone 11 include the coding sequence for human IL-13 binding protein. Just like in 1974, Judge Rich said in Silvetti v. Grant, the invention is not the language of the count, but the subject matter thereby defined. The language of the count is but one way to define the new invention and certainly not a unique definition. And more recently, in Taver v. Etchizenica, this court said the same thing, this time quoting William Shakespeare, a rose by any other name would smell as sweet. Therefore, when on October 23rd Pfizer has a physical substance in hand, recognize what you want. That should be enough. And any skilled worker in the art could take that clone and make that clone and use that clone. And this court should not let, should reject the no-fees attempt to use forms to trump substance to prevail over priority. Thank you, Your Honor. Thank you. First, I think a question here is, does this court want to have a clear rule for conception based on what an inventor knew or what information the inventor had at the time to determine conception as opposed to a fuzzy rule based on what the inventor believed he had. And that's what we have here. Pfizer believed it had something. Sanofi knew what it had on December 6th. Pfizer didn't know what it had until February. Didn't it have it in October? It had a clone. It had the subject matter of the claim. It had a clone that turned out to contain the subject matter of the count. It didn't directly answer the question, probably for good reason. The answer is yes, they had the sequence, they had a clone that had the sequence, but they did not know what they had. And they ultimately proved it, which showed that they had what they thought they had. Yes, they ultimately proved it in February of 1996. The question for conception is, when does the inventor have a complete conception? When did they have a definite, permanent idea of the complete and operative invention? You're saying they didn't have a conception, but they had a reduction of practice? No, Your Honor, because in order to have a reduction of practice, they have to know the structure of the compound. I think it's Cooper v. Goldfarb says that you have to appreciate every limitation of the count in order to have a reduction of practice. You also have to show that it will work, and that's what happened in Amgen. The inventor then showed that it would work, and so he had a simultaneous conception and reduction of practice. But can't you have that showing that it will work at a later date, with diligence in between? Yes, if you have an earlier conception, that's true. That's correct, Your Honor. So you're saying that they didn't even have the conception, much less the reduction of practice, at the time of their initial filing. That's correct. Now, counsel has referred to having this clone that said, oh, anybody can take that clone and determine what it is. Well, before Sanofi's benefit date, that clone didn't tell you what it was. You have to go in and sequence it, and they didn't do that until after the benefit date. The test should be what does the inventor have at the time of conception, not what might he have later on to further testing. Well, if I were to conceive of a light bulb, but, say, in November I made the filament too large to have adequate resistance to produce a globe, but in February, by tweaking it, I changed the filament size, would that not be conception with diligence with reduction of practice? Your Honor, if the invention was a light bulb with a specific kind of filament that they didn't have until February, then no, there would be no conception before, in the earlier date, when they first used the filament. It would have to be the right filament in order for there to be a conception. Here, another test for conception is that the inventor has sufficient information to distinguish his invention from other compounds. And in this context, as I discussed earlier, the only way to distinguish a sequence of a DNA from other sequences of similar DNA is by the sequences. So you have to have in hand the actual sequences of each DNA in order to see if they're the same or different. The actual sequencing today is so routine, even if along the way there were four errors out of I don't know how many thousands, and the errors were spotless. So the actual sequencing is no longer the adventure that it was at the time of Amgen. So when one embarks on this project knowing that you're looking for the IL-13 and that you know the properties, you know just what it is you're looking for, why isn't that conception of what you eventually reduce to practice? Your Honor, for the reason that sequencing has become much simpler and much faster is all the more reason why it should be required. There's no reason that an inventor should not know this complete sequence of their invention to have a conception. Because until that point they can't distinguish their sequence from other similar sequences and that's the keystone of conception. You need to be able to define your invention in a way that will distinguish it. Now, counsel said that, referred to him as Papish, saying that it's the compound, it's not the formula. Well, Papish was a section 103 case based on structural obviousness and in Papish the court looked beyond structure because it was an obviousness case. So they wanted to see whether the claimed invention had properties that were not predictable from the prior art structure. And that's why they looked at a compound in addition to structure. Admittedly, Papish was an obviousness case. Yes, and that doesn't have application here in exception context. Another point is that if you state your invention in terms of a function, that's just a belief and it's a function. And that goes against the admonitions in Frears, for example, that said you cannot have conception based solely on a biological function. And to say that I have the gene that will express the ILBC binding chain protein, that's a function. You're saying I'm claiming it by a function. But that's not going to allow you to identify the structure of a compound being claimed per se. And that's why this case is different. DNA is different. Okay, any more questions for Mr. Vedder? Any more questions? Thank you. Thank you.